Case 1:19-cv-00041   Document 46   Filed on 05/24/22 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
May 24, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DR. MADHAVAN PISHARODI, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:19-cv-41 |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On February 5, 2019, Plaintiff Dr. Madhavan Pisharodi filed suit against Wells Fargo Bank N.A. in the 138th District Court in Cameron County, Texas. Dkt. No. 1-4. Pisharodi alleged breach of contract, civil conversion, negligence, and violations of the Deceptive Trade Practices Act in relation to items missing from the safety deposit box he rented from Wells Fargo. Id.

On March 18, 2019, Wells Fargo timely removed the case to this Court on the basis of diversity jurisdiction. Dkt. No. 1.

On December 17, 2021, Wells Fargo filed a motion for summary judgment. Dkt. No. 20.

On February 25, 2022, the undersigned issued a report and recommendation, which recommended that the motion for summary judgment be granted. Dkt. No. 35. Pisharodi objected to the report and recommendation. Dkt. No. 36.

On April 4, 2022, the district judge conducted a de novo review of the report and recommendation and adopted the report and recommendation in full. Dkt. No. 40.

On April 29, 2022, Pisharodi filed a motion for a new trial, arguing that the granting of the summary judgment was based on a "manifest error of law." Dkt. No. 44. On May 20, 2022, Wells Fargo filed a response. Dkt. No. 45.

After reviewing the record and the relevant case law, it is recommended that the motion for a new trial be denied. Pisharodi has failed to show that any error of law exists, much less a manifest error of law.

**I. Background**

    **A. Factual Background**[1]

On March 23, 1989, Pisharodi rented a full service safe deposit box at the Wells Fargo branch at 835 East Levee Street in downtown Brownsville, Texas. Dkt. No. 26-1, p. 8; Dkt. No. 34, p. 9. According to Pisharodi, he never used the box during the first twenty years. Dkt. No. 34, p. 10. Moreover, no copy of the 1989 lease agreement has been entered into evidence.

In 2009, Pisharodi decided to utilize the safety deposit box to store some valuables, after his home burned down. Dkt. No. 34, p. 10. Pisharodi states that when he went to the bank in July 2009 to use the safety deposit box, Wells Fargo required him to sign some paperwork before he could access the box. Id.

On July 20, 2009, Pisharodi entered into a rental agreement with Wells Fargo as to the box. Dkt. No. 20-1, pp. 7-8. A copy of the rental agreement has been submitted into evidence. Id.

    The lease agreement contained this paragraph:

> By signing below you represent that you have examined the Box and agree that it is acceptable. By signing below you acknowledge that you have received copies of this Agreement, the Safe Deposit Box Lease terms, the Wells Fargo Privacy (Consumer), the Wells Fargo Privacy Policy for Business Principals: Keeping Your Information Safe and Secure (Business), the Consumer or Business Fee and Information Schedule and two (2) keys to the Box which you agree to return when the lease terminates or you surrender the Box. You also agree to the terms of the dispute resolution program described in the Safe Deposit Box Lease Terms disclosure. Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or before a judge.

Dkt. No. 20-1, p. 8.

Pisharodi signed the lease agreement. Dkt. No. 20-1, p. 8. The Court has already found that the lease terms were incorporated into the lease agreement. Dkt. Nos. 35, 40.

---

[1] The Court is limiting its discussion of the facts to those directly raised in the motion for a new trial. A fuller discussion of the facts can be found in the amended Report and Recommendation. Dkt. No. 35.

The Safe Deposit Box Lease Terms ("lease terms"), which were directly referenced in the lease agreement, state that by leasing the Box, Pisharodi agreed to "the terms and conditions contained in" the lease terms; the lease agreement; the fee schedule; the bank's privacy policy; and "any additional disclosures that the Bank may provide to you." Dkt. No. 20-1, p. 12.

The lease terms also provided that:

> These Lease Terms, the Lease Agreement, the Schedule, the Bank's applicable Privacy Policy and any additional disclosure the Bank may provide to you comprise the entire agreement between the Bank and you and supersedes any prior oral or written agreements regarding your Box.
> Dkt. No. 20-1, p. 12.

Pisharodi's claims against Wells Fargo stem from valuables that he claims went missing from the safe deposit box.

**B. Procedural History**

On December 17, 2021, Wells Fargo filed a motion for summary judgment. Dkt. No. 20. It argued that the lease terms control, defeating any claim for breach of contract. Id. Wells Fargo further argued that the conversion, negligence and DTPA claims are time-barred and also barred by the economic loss rule. Id.

On January 31, 2022, Pisharodi timely filed his response. Dkt. No. 31. He argued that the lease terms do not control because they were not part of the safe deposit box lease agreement. Id. He further argued that Wells Fargo violated the lease agreement, and that its actions constituted conversion, negligence, and violations of the DTPA. Id. Pisharodi also argued that the statute of limitations has not run. Id.

On February 7, 2022, Wells Fargo filed its response brief. Dkt. No. 32. It argued that the lease terms were incorporated into the lease agreement. Id. It also re-urged its prior claims regarding conversion, negligence, and violations of the DTPA. Id.

On February 25, 2022, the undersigned issued an amended report and recommendation, finding that summary judgment was appropriate. Dkt. No. 35. Pisharodi objected to the report and recommendation. Dkt. No. 36.

On April 4, 2022, the District Judge conducted a de novo review of the record and adopted the report and recommendation in full. Dkt. No. 40.

On April 29, 2022, Pisharodi filed a motion for a new trial. Dkt. No. 44. He made the following arguments: (1) Wells Fargo failed to establish that the 2009 rental agreement superseded the 1989 rental agreement; (2) Wells Fargo failed to establish that any consideration was given for the modification of the 1989 rental agreement; (3) there is a genuine dispute of material fact as to whether Pisharodi ever received the lease terms in 2009; (4) the Court erred by holding that the economic loss rule barred any tort-based claims made by Pisharodi; and (5) Pisharodi has a valid negligence claims against Wells Fargo. Id.

On May 20, 2022, Wells Fargo filed a response. Dkt. No. 45. It argued that (1) the 2009 lease agreement superseded any prior agreements; (2) the continued use of the safety deposit box and the supersession of any prior agreements were adequate consideration; (3) by signing the lease agreement, Pisharodi is estopped from arguing that he did not receive the lease terms; (4) the economic loss rule clearly applies in this case; and (5) that it did not owe Pisharodi any duties outside of the contractual duties of the lease agreement. Id.

**II. Applicable Law**

    **A. Motion to Amend Judgment**

After a Court has issued judgment, following the granting of a motion for summary judgment, a party may challenge that judgment by filing a motion to amend the judgment under FED. R. CIV. P. 59(e). Nationalist Movement v. Town of Jena, 321 Fed. App'x 359, 364 (5th Cir. 2009) (citing Patin v. Allied Signal, Inc., 77 F.3d 782, 785 n. 1 (5th Cir. 1996)). Because there was no trial, the Court will analyze Pisharodi's motion as one filed under Rule 59(e). Patin, 77 F.3d at 785 n. 1.

"A Rule 59(e) motion calls into question the correctness of a judgment." Jennings v. Towers Watson, 11 F.4th 335, 345 (5th Cir. 2021) (internal quotation marks omitted). A Rule 59(e) motion is "an extraordinary remedy that should be used sparingly." Realty Income Corp. v. Golden Palatka, L.L.C., 2022 WL 1517033, at *3 (5th Cir. May 13, 2022). "Under Rule 59(e), amending a judgment is appropriate (1) where there has been an

intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously unavailable; or (3) to correct a manifest error of law or fact." Demahy v. Schwarz Pharma, Inc., 702 F.3d 177, 182 (5th Cir. 2012).  A Rule 59 motion "cannot be used to raise arguments that could, and should, have been made before the judgment issued." Marseilles Homeowners Condo. Ass'n Inc. v. Fid. Nat. Ins. Co., 542 F.3d 1053, 1058 (5th Cir. 2008).

### III. Analysis

As previously noted, there are only three valid bases for granting a motion to set aside a judgment under Rule 59(e): manifest error of law; newly discovered evidence; or an intervening change in the law. Demahy, 702 F.3d at 182.  The only basis cited by Pisharodi is that a manifest error of law occurred. Dkt. No. 44, p. 6 (arguing that a manifest error of law is present in the Court's judgment).

However, a Rule 59(e) motion is not to be used to raise arguments that could have and should have been raised prior to the issuance of judgment. Marseilles Homeowners Condo. Ass'n, 542 F.3d at 1058.  Every one of the arguments raised in the motion for a new trial was available to Pisharodi in the summary judgment briefing, yet he chose not to raise many of them.  On this basis alone, the Court should deny the motion for a new trial. See Bartolowits v. Wells Fargo Bank, N.A. for Option One Mortg. Loan Tr. 2007-FXD1, 731 F. App'x 253, 259 (5th Cir. 2018) ("Because this argument was made for the first time in the motion to alter or amend judgment, but could have been made prior to entry of judgment, we hold that the district court did not abuse its discretion in denying the motion.").  However, for the sake of completeness, the Court will address each claim raised by Pisharodi.  Even with this additional review, he fares no better.

**A. Controlling Agreement**

Pisharodi argues that there is a genuine dispute of material fact as to whether the 2009 rental agreement superseded the 1989 rental agreement.  This argument is meritless.

As an initial matter, Pisharodi stated in his summary judgment brief that "[t]he only agreement between Plaintiff and Defendant is the Safe Deposit Lease Agreement entered into in 2009." Dkt. No. 31, p. 10.  After his arguments were rejected at the summary

5

judgment stage, he now argues that there were actually two rental agreements, creating a genuine dispute of material fact as to which agreement is controlling.

Pisharodi is judicially estopped from making this argument. "Under general principles of judicial estoppel, a party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument." Hotard v. State Farm Fire and Cas. Co., 286 F.3d 814, 818 (5th Cir. 2002).

Furthermore, even if Pisharodi was not judicially estopped from advancing this argument, it still fails. The Court has previously found that the lease terms were incorporated by reference into the lease agreement. Dkt. Nos. 35, 40. The lease terms explicitly state that the 2009 lease agreement "comprise[s] the entire agreement between the Bank and you and supersedes any prior oral or written agreements regarding your Box." Dkt. No. 20-1, p. 12.

Under Texas law, "a written instrument presumes that all prior agreements relating to the transaction have been merged into it and will be enforced as written and cannot be added to, varied, or contradicted by parol testimony." S. Green Builders, LP v. Cleveland, 558 S.W.3d 251, 258 (Tex. App. 2018). Pisharodi has presented no evidence to overcome this presumption. To whatever extent there was a 1989 lease agreement, it was extinguished by the 2009 lease agreement, making the 2009 agreement controlling. The existence of the alleged 1989 agreement is not material to this case.

**B. Consideration**

Pisharodi argues that the 2009 rental agreement was not backed by adequate consideration. This claim is meritless, as well.

Under Texas law, the Court presumes that a written contract is backed by adequate consideration. Ropa Expl. Corp. v. Barash Energy, Ltd., 2013 WL 2631164, at *6 (Tex. App. June 13, 2013). The party seeking to negate the contract must show that no consideration was actually received. Id. The adequacy of consideration is a question of law for the Court. WCW Int'l, Inc. v. Broussard, 2014 WL 2700892, at *11 (Tex. App. June 3, 2014).

6

Pisharodi was given adequate consideration. In exchange for paying $70 every year, Pisharodi had the opportunity to store his personal property in a locked box at the bank. Dkt. No. 20-1, p. 7. This comports with the common use meaning of the word "lease." See City of Galveston v. Texas General Land Office, 196 S.W.3d 218, 225 (Tex. App. 2006) (defining a lease as a situation where "rental payments may be the required consideration provided in exchange for the right to use and occupy certain property"). Furthermore, the 2009 rental agreement superseded the 1989 rental agreement, accordingly, Pisharodi was given consideration in the form of having any previous obligations extinguished by the new agreement. This claim should be denied.

**C. Receipt of Lease Terms**

Pisharodi reiterates his argument that there is a genuine dispute of material fact as to whether he ever received the lease terms. This claim is, similarly, meritless.

By signing the lease agreement, Pisharodi "acknowledge[d]" that he had received copies of the lease agreement and the lease terms. Dkt. No. 20-1, p. 8. Thus, Pisharodi acknowledged, as a matter of contract, that he received the lease terms prior to signing the lease agreement. Dkt. No. 20-1, p. 8. He is estopped from arguing that he did not actually receive them. Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd., 960 F.3d 200, 204 (5th Cir. 2020) ("A party who signs an agreement is presumed to know its contents. That includes documents specifically incorporated by reference.").

"Absent fraud, misrepresentation, or deceit, parties are bound by the terms of the contract they sign, regardless of whether they read it or thought it had different terms." Honrubia Properties, Ltd. v. Gilliland, 2007 WL 2949567, at *8 (Tex. App. Oct. 11, 2007). Pisharodi has not alleged that Wells Fargo engaged in fraud, misrepresentation, or deception when he signed the lease agreement. He cannot attempt to create a fact issue by arguing that there is no evidence that he received them; his signature on the contract establishes otherwise. This claim should be denied.[2]

---

[2] Because the Court has found that adequate consideration exists and that Pisharodi is estopped from arguing that he did not receive the lease terms, the contractual limitations found in the lease

7

**D. Economic Loss Rule**

Pisharodi argues that the economic loss rule is inapplicable in this case. This argument is also meritless.

"The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." Chapman Custom Homes, Inc. v. Dall. Plumbing Co., 445 S.W.3d 716, 718 (Tex. 2014) (per curiam). "If the matter in dispute is the subject of a contract, a party may elect a recovery in tort if the duty breached stands independent from the contractual undertaking and the alleged damages are not solely the result of a bargained-for contractual benefit." Brandon v. Wells Fargo Bank, N.A. as Tr. for Registered Holders of LaSalle Com. Mortg. Sec., Inc. 2007-MF5, Com. Mortg. Series 2007-MF5, 2020 WL 2776714, at *12 (Tex. App. May 28, 2020). However, if the harm extends beyond the bounds of the contract, the economic loss rule does not apply. Chapman Custom Homes, 445 S.W.3d at 718 (when plumber did a job so poorly, that the entire home was flooded, it violated a common law duty to perform his job with sufficient care and skill, giving rise to a negligence claim).

If the injury alleged arose out of a contractual duty, then the plaintiff cannot seek tort relief, even if the defendant negligently acted in failing to fulfill its duty. Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP, 599 S.W.3d 618, 636 (Tex. App. 2020). Put another way, the economic loss rule applies when a "conversion claim rests on the fact" that the defendant's negligent conduct prevented the plaintiff "from receiving its bargained for consideration." Id. The economic loss rule also applies to DTPA claims, where the injury resulted from the failure to perform under the contract. BCC Merchant Solutions, Inc. v. Jet Pay, LLC, 129 F. Supp. 3d 440, 469 (N.D. Tex. 2015).

Pisharodi alleges that Wells Fargo failed to secure his belongings from unauthorized persons. Wells Fargo's duties to protect the box were delineated within the lease terms. It states that the bank's "only obligation" as being "to allow authorized persons to and prevent

---

terms (outlining Wells Fargo's duties, warranty disclaimers and liability limitations) are applicable in this case.

unauthorized persons" from accessing the box. Dkt. No. 20-1, p. 16. The bank's duty to prevent unauthorized access arose solely due to the contract. When a party fails to uphold a duty that exists solely because of a contractual agreement, then the economic loss rule applies, barring tort-based claims. Stauffacher v. Coadum Cap. Fund 1, LLC, 344 S.W.3d 584, 591 (Tex. App. 2011). This claim should be denied.

### E. Negligence Claims

Pisharodi alleges that he has two viable negligence claims against Wells Fargo: (1) violations of Tex. Prop. Code § 91.004 and (2) premises liability. Neither really applies to this case and, in any event, are meritless.

As to the first claim, Texas law provides that "[i]f the landlord of a tenant who is not in default under a lease fails to comply in any respect with the lease agreement, the landlord is liable to the tenant for damages resulting from the failure." TEX. PROP. CODE § 91.004(a). This law is not a rule of negligence, but a rule of contract, allocating damages for breach of a lease contract. Weber v. Domel, 48 S.W.3d 435, 437 (Tex. App. 2001) (noting that § 91.004 is not an "independent tort"). Accordingly, this claim must fail.

As to the second claim, this is not a premises liability case. "In Texas, a person injured on another's property may sue the property owner or occupier under a premises-liability theory for injuries sustained as the result of an unreasonably dangerous condition on the premises." Hawes v. Link Ministries, Inc., 2020 WL 4723176, at *2 (Tex. App. Aug. 13, 2020), review denied (Dec. 4, 2020). Pisharodi did not suffer any personal injury as a result of a dangerous condition. Pisharodi claims that the dangerous condition was "the lack of security and monitoring over the common areas which must be traversed by unauthorized persons to reach Pisharodi's safe deposit box." Dkt. No. 44, p. 23. Pisharodi would have to introduce evidence that Wells Fargo knew or should have known that this defect existed; no such evidence is present in the record. This claim is meritless to the and should be denied.

### IV. Recommendation

It is recommended that the motion for new trial filed by Plaintiff Madhavan Pisharodi be denied. Dkt. No. 44.

The parties have fourteen (14) days from the date of being served with a copy of this Amended Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. <u>Battle v. United States Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a <u>de novo</u> review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. <u>Alexander v. Verizon Wireless Servs., L.L.C.</u>, 875 F.3d 243, 248 (5th Cir. 2017).

DONE at Brownsville, Texas on May 24, 2022.

_____
Ronald G. Morgan
United States Magistrate Judge